This is People's State of Illinois v. Jerry Hart. We have Elaine Belcher for the appellant, and we have Mr. Tim Ting for the appellate. When you're prepared to proceed, Ms. Belcher. May it please the Court, counsel. My name is Elaine Belcher, and I represent Jerry Hart. Today I will concentrate my argument on the reasonable doubt issue and expand my brief on the remaining jury waiver issue, unless the Court has any questions. Mr. Hart respectfully requests that this Court reverse its conviction for driving under the influence of alcohol. Your Honors, the facts of this case show that the State did not prove, beyond a reasonable doubt, that the consumption of alcohol impaired Mr. Hart's ability to safely operate his car. The record shows that the arresting officer noticed Mr. Hart driving a little fast. The officer did not say how fast he was going or what the posted speed limit was. But he did run the stop light a little. Stop sign a little. As she was following him, she noticed he made two different turns. She did not say that he made the turns unsafely or that he failed to use his signal. But he ran the stop sign. Thereafter, he approached the stop sign. There were no other cars in sight. She saw him use his brake light, but he did not make a complete stop. Immediately after that, he pulled into a parking lot. Then the officer turned around, pulled up next to him, asked for his license and insurance information. He provided it. It was valid. She did notice that he had an odor of alcohol, bledshot eyes, and he was unsteady as he stood beside her. However, his speech was not slurred and he was not stuttering. She did not ask him if he had anything to drink and he never indicated he had any drinking. However, she did ask him to take some pills for ID tests. He declined. At that point, she arrested him for driving under the influence. She proceeded to give him his Miranda rights. She said he did not appear confused when she read him his rights and he answered the questions appropriately, that he understood the rights. Then they proceeded to the police station. He walked inside. She did not say he had any trouble walking inside. At that point again, she asked him to take a breathalyzer. He declined. That is the evidence we have where they charged him with driving under the influence of alcohol. Based on the totality of the evidence, the record does not show that he was in fact driving under the influence of alcohol. At the most, it shows he made a rolling stop, a complete stop. But aren't you ignoring a good deal of case law that says that that can be conclusive evidence of unsafe driving or danger to the public? Usually, counsel cited cases where the defender did not stop at a stop sign. However, in those cases, there was evidence of excessive speed in combination with other evidence for the traffic violation. In combination for the driving under the influence here, we don't know. Apparently, it wasn't fast enough for her to stop him for speeding because she decided to follow him instead. Then eventually, after he had already pulled over voluntarily, she pulled up next to him. So the only evidence that his driving was impaired was the incomplete stop. Then, as the case law does show, that while the smell or odor of alcohol can indicate consumption of alcohol, it doesn't prove that his ability, that he was under the influence of alcohol, which where he was so impaired he couldn't operate his car safely, which a statute requires. Now, were there any, there were no field tests on his walking or turning? He declined. He declined. She asked him, he declined, and at that point, she arrested him. Then, as I said, he went to the police station, walked in fine. She did ask him to take a breathalyzer and he, again, declined. She did not ask him to take any blood or urine tests. So that's all that we have in this case. So I would argue that it's insufficient to prove that he was driving, that he was impaired, which rendered his ability to drive and operate his car unsafely. Thank you. If the court doesn't have any more questions, I would ask that the court reverse its decision. Thank you, Ms. Belcher. We still have the opportunity for rebuttal. Mr. Tame. Your Honor, may I please report to the court? Hello. My name is Timothy James Ding, and I refuse to say it out loud again. My time for you all is to say why the defense conviction for driving under the influence should be affirmed by this honorable court and the issue, too, that he knowingly waived his right to a jury trial. As to the first issue, the rules of law are simplistic. One, that a defendant was driving or in control from over the vehicle. And two, that the defendant was intoxicated while in operation. Those are the elements that must be sustained or must be proven beyond reasonable doubt to sustain that conviction. Intoxication, while there is no clear definition, it's generally described as, and I quote, when mental faculties or physical faculties are so impaired as to reduce the ability to think and act in ordinary care. It's well settled that the testimony of an officer is sufficient to sustain a DUI conviction. It's also well settled that a defendant's refusal to submit to a breathalyzer test. Well, most attorneys would probably recommend that he not take the breathalyzer. So his faculties might not have been that impaired. Is that a question? Wouldn't most attorneys recommend that he not take the breathalyzer? I would think that most criminal defense attorneys would, yes, Your Honor. So he probably made a good decision there. He probably made a good decision as to his defense, but Your Honor. Well, that's what he's trying to do, isn't he? I understand that he may have tried to do that, but he tried and he failed miserably. Juan, I would quote from Stan and Jan Berenstain, which stated, if it looks like honey and it smells like honey and it tastes like honey, it's honey. Well, at the risk of sounding shrunk here, that is simple inductive logic. And what we have here in the record, on page 5 and 6, an officer with over 300 DUI arrests, on page 13 of the record, said that he's very intoxicated. On page 6 and 16 of the record, he said he was driving fast and that he failed to stop at a stop sign. What was the speed? It was not clear, but Your Honor, ask the speed, whether it's excessive or fast or mincing words. There's no speculation as to what excessive speed is. The fact is unabutted, it was fast driving. Whether the officer did not have a radar capability or merely saw him driving fast, it's unabutted that he was driving fast. Let's take the fast part of it out of it. Yes, even if you take the fast part of it, as you stated, Justice Chaffetz, he broke the law. The defendant's breaking the law by failing to stop at a stop sign is conclusive evidence that he had unsafe driving. Failing to stop at a stop sign… Did he get a ticket for – or a citation for rolling the stop? Yes, Your Honor. So he failed to stop at a stop sign. Did he plead on that? He may have actually been dismissed with his DUI conviction. I don't have it in front of me, so I doubt it. But it may have been – Well, we'll get the record. We'll figure it out. But regardless, it's unabutted. It's unabutted evidence, so we don't even have to have the conviction to show that it's unabutted. The officer testified that he failed to stop at a stop sign, and there's no evidence to rebut it. In a reasonable doubt argument, sufficient to do the evidence, any reasonable inference from the record must be construed in the light most favorable to the State. So it still goes in the State's favor. Once he broke the law, as you can see in People v. Hood, People v. Holtz, People v. Brett Rajovski, when a defendant breaks the law by failing to stop at a stop sign, he is dangerous. That is the reason stop signs are there. I mean, the public policy behind it – What time of the day was this? What time of the day? I'm not exactly sure what time of the day it was. And what type of area was this? Was it rural or was it sit-in city? No, Your Honor. Those may be questions that would be relevant maybe for a jury proceeding. Okay, my question is what are they? I don't care if it's a jury or not. I just want to know what it was. Your Honor, I don't have those facts in front of me, but it does not matter. It doesn't matter. We do know this fact, and I will concede this point. The State will concede that there seems to be no one around the stop sign. So I would agree with the – Do we have a time? I believe it's late at night, but I don't know without particularly looking at the particular facts of the record. But that's okay. We don't need to know the time. If it's 12 o'clock in the morning or it's midnight, if the defendant breaks the law by failing to stop at a stop sign, he is a threat to public safety. And when that defendant has multiple beer cans strewn across his vehicle, as you can find in page 10 and 11 of the record, exhibits – How many cans did they count? It doesn't matter. The fact that there was even beer cans in the vehicle, again, Your Honor, shows that the specifics of those facts do not ultimately matter as much as the totality of those facts. The smell of alcohol, the fact that there were beer cans in his vehicle, the fact that he exhibited erratic movements between – I want this court specifically to quote from People v. Bostelman, which says, If a lay person with no more experience – no more than normal experience is qualified to assess the individual's state of sobriety, so much more qualified is a police officer who's made several arrests for driving under the influence. We have here a man who failed to take – who refused to take a breathalyzer test. And while you said that may be good for his defense, case law has also proven that the refusal to submit to a breath test can be an indication of his consciousness of guilt. When we have that, in addition to the smell of alcohol, in addition to the multiple beer cans strewn across the vehicle, in addition to the fact that he broke the wall while driving, showing the impairment of his function, this is precisely the type of case that the trial court would say, certainly, he has been proven guilty beyond a reasonable doubt. There's nothing in the record that says that he didn't drive fast, that he didn't fail to stop at the stop sign, that he didn't have strong odor of alcohol. These are all facts that are unrebutted. Regardless of the specifics or the time of day or the number of cans, it does not matter. What matters is that with the record, as we have it, there's unbuttoned testimony that he was smelling like alcohol, he looked drunk to the officer, and he broke the wall. That in and of itself is enough. By the point of this court that a people versus – or a state versus resists the state, a drunk driver is not at all unlike a bomb and a mobile weapon. The defendant driving in his vehicle is a time bomb. The officer shouldn't have to wait until he commits a really dangerous crime by hitting someone or almost hitting someone. The fact that he failed to stop at a stop sign, whether it's in a metropolitan area or it's in a rural community, it does not matter. Those facts do not hit the heart of the matter. It's just that he broke the wall, and he smelled, looked, and acted like he was drunk. That is enough proving guilty beyond a reasonable doubt. As to the waiver of jury trial argument, Your Honors, people versus Enoch, very established. Objection must be given. Now, let's do that. He looked drunk. I mean, he looked under the influence is what you're trying to say. Yes, he looked – And what were those – I would say he looked drunk. Just all – what were those elements? The elements that he looked drunk. They looked under the influence, I think, is what you're trying to say. Well, yes, but I would say that he was to the point of drunk. I would say it's beyond just under the influence because someone can be under the influence to the extent that they can still properly operate a motor vehicle. They can drink a beer and still properly operate a motor vehicle. Well, I mean, he wouldn't smell a beer, though, if he drank a beer. It's when they're under the influence to the extent that they can no longer properly operate that motor vehicle. Here, the officer said it, and I quote, he was very intoxicated, not just somewhat intoxicated, very intoxicated. And what was that based on is what I'm trying to find out. The officer said that in his 300 years, there are 300 arrests, DUI arrests. Defendants who are drunk exhibit wild mood swings. They're happy, they're sad, they laugh, they grunt. Here, the defendant exhibited mood swings, wild mood swings, as you can find on page 12 of the record. Of these 300 arrests, how many were convictions? Your Honor, I do not know. I do not know. But, again, it's irrelevant here. What we have here is an officer who came and saw a defendant who exhibited erratic mood swings. Again, I would point to this court. If a person of reasonable intelligence and experience can see when someone is barely intoxicated, surely an officer who's seen this type of thing on a day-to-day basis for years would know when a person is intoxicated. What is an erratic mood swing? I don't know. Your Honor, the officer in his testimony describes an erratic mood swing as going from one state of consciousness to another state of consciousness. Like, very happy. Like, hey, I'm with an officer. I'm about to be arrested for DUI. Oh, no, I'm with an officer. I'm about to be arrested for DUI. Was there any testimony in the record as to this? Absolutely. Page 12 of the record. And what does it say? I don't have the exact testimony in front of me, but it says that he exhibited erratic mood swings. It was a conclusion, in other words. Absolutely. So the officer gave a conclusion but never said any facts. Well, the officer said that he exhibited wild mood swings. He said he was happy and sad. I mean, those would be facts supporting that conclusion. I don't have the exact testimony in front of me, but he gives some facts. I thought it was a she. Oh, okay, the officer. To support the fact that the defendant exhibited these erratic mood swings. And even if the officer didn't, let's say the officer just said it went to the state. He exhibited erratic mood swings. Reasonable inferences have to be given to the state with a standard of review. This court still must follow the law and say if the officer says they've had experience and the defendant exhibited erratic mood swings and the people who exhibited erratic mood swings are under the influence, this court has to accept that conclusion. The officer is trained to make conclusions like that every single day. Well, it would be certainly better, and I believe it is in the testimony. I don't have it in front of me, but I believe it's in the testimony that the officer gives facts as to his particular types of mood swings, whether he was happy, sad, or depressed and agitated. I don't know of those specifics, but it does not matter. At this point, the evidence. You see my time is up. Thank you. Thank you, Mr. Tate. Ms. Belcher. I believe I can answer some of your honors questions. The record shows the stop was at 1130 at night, and I believe I said earlier there were no other cars in sight. I believe they were within the city limits of Marion. They indicated some street names in the record, and the officer did not give him a ticket for making an incomplete stop. However, she did, as far as going to the officer's credibility, even with her over 300 arrests for DUIs, she also gave him a ticket for a container of alcohol, I guess from the beer can. But then she did testify there was no actual alcohol in the car, in those cans, or otherwise. Therefore, the state, during trial, ended up dismissing that charge based on lack of evidence. And as far as mood swings, we don't know. She said he was swearing and quiet, telling jokes. She characterized that as having mood swings, but again, we don't know his personality. And I did cite a case in my reply brief, Sullivan, which is very similar, where the officer characterized the same sort of personality as mood swings, but the court still found, based on the Odebaugh call, the so-called mood swings and the bloodshot eyes, that evidence was insufficient to find him guilty. Odebaugh is swaying back and forth. As he stood next to her, he was unsteady. That's it. R-9? Yes, she did say he was unsteady as he stood next to her. But on the other hand, she did not say he had any trouble walking into the police station or while they were there. She didn't say that he continued to have such issues, if it was an issue at all. So I would just say it just wasn't evidence to not show fully. We don't know how he was standing or if he was nervous, you know, the situation at that point in time when the officer approached him. Did the record contain any testimony that he refused the field sobriety test? Yes, she said that he declined the field sobriety test. Was there anything in the record to indicate he refused the breathalyzer? Yes, she also testified that he refused that at the police station, yes. Thank you. That is all I have. Thank you, Ms. Belcher. Thank you, Mr. King. At this time, we're going to take a brief break.